SEALED
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 22 2000

at ____ o'clock and ____ min. ____ M.
WALTER A. Y. H. CHINN, CLERK

STEVEN S. ALM
United States Attorney
District of Hawaii

ELLIOT ENOKI
First Assistant U.S. Attorney

THOMAS J. BRADY
RACHEL S. MORIYAMA
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 00-00105 SOM |
| | ) | |
| Plaintiff, | ) | FIRST SUPERSEDING INDICTMENT |
| | ) | (As to Defendant Allen Andy |
| v. | ) | Kimball) |
| | ) | |
| ALLEN ANDY KIMBALL,  (01),) | | [21 U.S.C. §§ 846, 841(a)(1), |
| JOSE SERPA,  (02),) | | 853, 861; 18 U.S.C. §§ |
| REUBEN SILVA,  (03),) | | 924(c)(1), 1956(a)(1)(B)(i), |
| aka "Blackie," ) | | 1956(a)(1)(A)(i), 1956(h), |
| BRANDON GONZALES,  (04),) | | 982(a)(1), and 2] |
| SEAN EADS,  (05),) | | |
| METHODIST GAONO,  (06),) | | |
| LISA BERNALES,  (07),) | | |
| | ) | |
| | ) | |
| Defendants. | ) | |

FIRST SUPERSEDING INDICTMENT

COUNT 1

The Grand Jury charges that:

On or about July 6, 1999, in the District of Hawaii,

ALLEN ANDY KIMBALL and JOSE SERPA did knowingly and intentionally

possess with intent to distribute and distribute in excess of
five grams of crystal methamphetamine, a Schedule II controlled
substance.

All in violation of Title 21, United States Code,
Section 841(a)(1) and Title 18, United States Code, Section 2.

<u>COUNT 2</u>

The Grand Jury further charges that:

On or about July 7, 1999, in the District of Hawaii,
ALLEN ANDY KIMBALL and JOSE SERPA did knowingly and intentionally
possess with intent to distribute and distribute in excess of
five grams of crystal methamphetamine, a Schedule II controlled
substance.

All in violation of Title 21, United States Code,
Section 841(a)(1) and Title 18, United States Code, Section 2.

<u>COUNT 3</u>

The Grand Jury further charges that:

On or about July 16, 1999, to and including July 21,
1999, in the District of Hawaii, ALLEN ANDY KIMBALL and JOSE
SERPA did knowingly and intentionally possess with intent to
distribute and distribute in excess of 50 grams of crystal
methamphetamine, a Schedule II controlled substance.

All in violation of Title 21, United States Code,
Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT 4

The Grand Jury further charges that:

On or about August 4, 1999, in the District of Hawaii, ALLEN ANDY KIMBALL, JOSE SERPA and REUBEN SILVA, aka "Blackie," did knowingly and intentionally possess with intent to distribute and distribute in excess of 50 grams of crystal methamphetamine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT 5

The Grand Jury further charges that:

On or about August 28, 1999, in the District of Hawaii, ALLEN ANDY KIMBALL, JOSE SERPA and REUBEN SILVA, aka "Blackie," did knowingly and intentionally possess with intent to distribute and distribute in excess of 50 grams of crystal methamphetamine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT 6

The Grand Jury further charges that:

From a date unknown, but from at least September, 1997, to on or about May 23, 2000, within the District of Hawaii and elsewhere, ALLEN ANDY KIMBALL, JOSE SERPA, REUBEN SILVA, aka

"Blackie", BRANDON GONZALES, SEAN EADS, and METHODIST GAONO,
defendants herein, did conspire with each other, and others
unknown to the Grand Jury, to knowingly and intentionally possess
with intent to distribute in excess of 50 grams of
methamphetamine, a Schedule II controlled substance, in violation
of Title 21, United States Code, Section 841(a)(1).

<u>MANNER AND MEANS OF ACCOMPLISHING THE CONSPIRACY</u>

1.    The crystal methamphetamine distribution
organization consisted of the named defendants and others.  Some
of the named defendants provided the methamphetamine, while other
unnamed defendants converted methamphetamine to crystal
methamphetamine in California.  A third level of named defendants
supported the organization by distributing the crystal
methamphetamine to and within the State of Hawaii as well as by
transferring the drug proceeds back to California.

2.    Throughout 1997 and 1999, in Los Angeles,
California, JOSE SERPA obtained powdered methamphetamine from
others.

3.    The processing of the methamphetamine to crystal
methamphetamine, commonly referred to as "ice," would be
facilitated by JOSE SERPA and others, who would then contract
with other individuals to transport the crystal methamphetamine
via personal courier to the State of Hawaii.

4

4.    Once the crystal methamphetamine was ready for transport, REUBEN SILVA, aka "Blackie," BRANDON GONZALES, SEAN EADS, METHODIST GAONO, and others would receive the crystal methamphetamine in Los Angeles, California and transport the drugs secreted in their personal luggage to Hawaii.  Once in Hawaii, the drugs would be re-distributed for sale by ALLEN ANDY KIMBALL to REUBEN SILVA, aka "Blackie," and others.

5.    ALLEN ANDY KIMBALL and REUBEN SILVA, aka "Blackie," and others would collect the cash proceeds from the sale of the crystal methamphetamine - "ice," in Hawaii and send this money via personal courier to JOSE SERPA and others in California. The couriers would pick up additional amounts of crystal methamphetamine for transport to Hawaii.

6.    From September, 1997, through and including May 23, 2000, ALLEN ANDY KIMBALL, JOSE SERPA, REUBEN SILVA, aka "Blackie," BRANDON GONZALES, SEAN EADS, METHODIST GAONO and others had distributed over twenty pounds of crystal methamphetamine in Hawaii per year.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects thereof, the following overt acts were committed in the District of Hawaii and elsewhere by members of the conspiracy:

1)    On or about February 19, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of

cash to REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to an associate of JOSE SERPA in California.

2)    On or about February 19, 1998, REUBEN SILVA, also known as "Blackie," delivered the undisclosed amount of cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

3)    On or about May 2, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to an associate of JOSE SERPA in California.

4)    On or about May 2, 1998, in Los Angeles, California, REUBEN SILVA, also known as "Blackie," delivered the undisclosed amount of cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

5)    On or about August 14, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to JOSE SERPA in California.

6)    On or about August 14, 1998, in Los Angeles, California, REUBEN SILVA, also known as "Blackie," delivered the

6

undisclosed amount of cash to JOSE SERPA at the Eldorado Coast
Hotel in Lomita, California, and picked up a shipment of crystal
methamphetamine for transportation to Hawaii.

      7)    On or about November 6, 1998, in Honolulu, Hawaii,
ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to
BRANDON GONZALES to be transported, via hand carry luggage, and
delivered to an associate of JOSE SERPA in California.

      8)    On or about November 6, 1998, in Los Angeles,
California, BRANDON GONZALES delivered the undisclosed amount of
cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in
Lomita, California, and picked up a shipment of crystal
methamphetamine for transportation to Hawaii.

      9)    On or about June 24, 1999, ALLEN ANDY KIMBALL
walked to Kentucky Fried Chicken Restaurant, located at Kapiolani
Boulevard and Keeaumoku Street, Honolulu, Hawaii, and discussed
plans to distribute crystal methamphetamine, commonly referred to
as "ice."

      10)    On or about July 21, 1999, ALLEN ANDY KIMBALL met
with another person in the parking lot behind Video Online,
located at 1532 Makaloa Street, Honolulu, Hawaii, for the purpose
of receiving a $6,000 payment for two (2) ounces of crystal
methamphetamine, which KIMBALL had previously distributed through
one of his associates.

11)  On or about August 4, 1999, ALLEN ANDY KIMBALL met with another person at Video Online, located at 1532 Makaloa Street, Honolulu, Hawaii and provided that person with approximately five (5) ounces of crystal methamphetamine in exchange for approximately $13,500, of which $12,000 cash was received by KIMBALL after the drug transaction.

12)  On or about August 11, 1999, ALLEN ANDY KIMBALL met with another person at Video Online, located at 1532 Makaloa Street, Honolulu, Hawaii, for the purpose of receiving a $1,500 payment for five (5) ounces of crystal methamphetamine, which KIMBALL had previously distributed to another person.

13)  On or about August 28, 1999, ALLEN ANDY KIMBALL met with another person at KIMBALL's residence, located at 91-1028 Polohuku Street, Ewa Beach, Hawaii, and provided that person with approximately four (4) ounces of crystal methamphetamine in exchange for approximately $12,000, of which $12,000 cash was received by KIMBALL after the drug transaction.

14)  On or about August 31, 1999, ALLEN ANDY KIMBALL, through the use of the telephone, discussed with another person the four ounce "ice" deal KIMBALL participated in on August 28, 1999.

15)  On or about August 31, 1999, ALLEN ANDY KIMBALL met with another person at Pearlridge Shopping Center, Honolulu, Hawaii for the purpose of receiving a $12,000 payment for four

8

(4) ounces of crystal methamphetamine, which KIMBALL had previously distributed to another person.

All in violation of Title 21, United States Code, Section 846.

## COUNT 7

The Grand Jury further charges that:

On or about February 2, 1998, in the District of Hawaii, ALLEN ANDY KIMBALL did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the exchange of $10,000 in cash for a cashier's check, which involved the proceeds of a specified unlawful activity, that is, distribution of methamphetamine, a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, ALLEN ANDY KIMBALL knew that the property involved in the financial transaction, that is, $10,000 in United States currency, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

9

COUNT 8

The Grand Jury further charges that:

In or about February, 1998, in the District of Hawaii, ALLEN ANDY KIMBALL and LISA BERNALES did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, to wit, the deposit and withdrawal of $12,000 in cash into a financial institution, which involved the proceeds of a specified unlawful activity, that is, distribution of methamphetamine, a controlled substance, knowing that the transactions were designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, ALLEN ANDY KIMBALL and LISA BERNALES knew that the property involved in the financial transaction, that is, monetary instruments in the amount of $12,000, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

COUNT 9

The Grand Jury further charges that:

On or about June 5, 1998, in the District of Hawaii, ALLEN ANDY KIMBALL did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate

commerce, to wit, the purchase of a 1999 Chevrolet Suburban,
which involved the proceeds of a specified unlawful activity,
that is, distribution of methamphetamine, a controlled substance,
knowing that the transaction was designed in whole and in part to
conceal and disguise the nature, location, source, ownership, and
control of the proceeds of said specified unlawful activity, and
that while conducting and attempting to conduct such financial
transaction, ALLEN ANDY KIMBALL knew that the property involved
in the financial transaction, that is, $37,534.98 in United
States currency, represented the proceeds of some form of
unlawful activity.

All in violation of Title 18, United States Code,
Section 1956(a)(1)(B)(i) and 2.

<u>COUNT 10</u>

The Grand Jury further charges that:

In or about April 1999, in the District of Hawaii and
elsewhere, JOSE SERPA did knowingly engage and attempt to engage
in a monetary transaction, affecting interstate commerce, in
criminally derived property of a value greater than $10,000, that
is, the transfer and delivery of $80,000 in United States
currency, such property having been derived from a specified
unlawful activity, that is, the distribution of methamphetamine,
a controlled substance.

11

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT 11

The Grand Jury further charges that:

In or about April 1999, in the District of Hawaii and elsewhere, JOSE SERPA did knowingly engage and attempt to engage in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the payment of $29,000 by monetary instruments for the purchase of real property located at 14 Pony Lane in Palos Verdes Peninsula, California, such property having been derived from a specified unlawful activity, that is, the distribution of methamphetamine, a controlled substance.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT 12

The Grand Jury further charges that:

That beginning at a time unknown to the Grand Jury, but no later than on or about September 1997, and continuing to on or about May 23, 2000, defendants ALLEN ANDY KIMBALL, JOSE SERPA, REUBEN SILVA, aka "Blackie," BRANDON GONZALES and LISA BERNALES in the District of Hawaii and elsewhere, did unlawfully and knowingly combine, conspire, confederate and agree among themselves and with each other, and with persons, known and

12

unknown to the Grand Jury, to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, to wit, transferring and delivering monies to and by personal couriers, which involved the proceeds of a specified unlawful activity, that is, drug trafficking, with the knowledge that the proceeds were from some form of unlawful activity and the intent to promote the carrying on of specified unlawful activity. in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and (h).

### MANNER AND MEANS OF ACCOMPLISHING THE CONSPIRACY

1.    The proceeds from the illegal drug transactions in Honolulu, Hawaii were collected by the named defendants and others.  Those proceeds would then be transported to ALLEN ANDY KIMBALL. Some of those illegal drug proceeds would then be given to LISA BERNALES and others, to hold in bank safety deposit boxes. The illegal drug proceeds would then be withdrawn from the bank safety deposit boxes and returned to ALLEN ANDY KIMBALL. KIMBALL in turn would package the illegal drug proceeds and have personal couriers transport the money from Hawaii to JOSE SERPA and his associates in California.

2.    Throughout 1998 and 1999, on at least six separate occasions, LISA BERNALES received packages of money from ALLEN ANDY KIMBALL which were deposited into and withdrawn from her bank safety deposit box.

13

3.    Throughout 1998 and 1999, on at least five separate occasions, REUBEN SILVA, aka "Blackie," and others would collect the cash proceeds from the sale of the crystal methamphetamine from ALLEN ANDY KIMBALL and transport this money via personal courier to JOSE SERPA and others in California.

<u>OVERT ACTS</u>

In furtherance of this conspiracy and in order to effect the objects thereof, the following overt acts, each of which consisted of the transferring or delivery of an amount of cash which was the proceeds of drug trafficking activity by personal courier from Hawaii to a conspirator in California, were committed in the District of Hawaii and elsewhere.

(1)    On or about February 19, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to an associate of JOSE SERPA in California.

(2)    On or about February 19, 1998, REUBEN SILVA, also known as "Blackie," delivered the undisclosed amount of cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

(3)    On or about May 2, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to

REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to an associate of JOSE SERPA in California.

(4)  On or about May 2, 1998, in Los Angeles, California, REUBEN SILVA, also known as "Blackie," delivered the undisclosed amount of cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

(5)  On or about August 14, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to REUBEN SILVA, also known as "Blackie," to be transported, via hand carry luggage, and delivered to JOSE SERPA in California.

(6)  On or about August 14, 1998, in Los Angeles, California, REUBEN SILVA, also known as "Blackie," delivered the undisclosed amount of cash to JOSE SERPA at the Eldorado Coast Hotel in Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

(7)  On or about November 6, 1998, in Honolulu, Hawaii, ALLEN ANDY KIMBALL delivered an undisclosed amount of cash to BRANDON GONZALES to be transported, via hand carry luggage, and delivered to an associate of JOSE SERPA in California.

(8)  On or about November 6, 1998, in Los Angeles, California, BRANDON GONZALES delivered the undisclosed amount of cash to an associate of JOSE SERPA at the Eldorado Coast Hotel in

Lomita, California, and picked up a shipment of crystal methamphetamine for transportation to Hawaii.

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and (h).

### COUNT 13

The Grand Jury further charges that:

A.    In committing the offenses alleged in Count 6 of this First Superseding Indictment, such offense being punishable by imprisonment for more than one year, ALLEN ANDY KIMBALL, JOSE SERPA, REUBEN SILVA, aka "Blackie," BRANDON GONZALES, SEAN EADS, and METHODIST GAONO shall each forfeit to the United States any and all property constituting or derived from any proceeds which any of them obtained, directly or indirectly, as a result of the offenses alleged in Count 6, and/or any and all property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the offenses alleged in Count 6, including but not limited to the following property:

(1)    $267,831.76 in United States currency which constitutes the net proceeds from the sale of certain real property located at 104 Hermosa Avenue, Hermosa Beach, California 90254, and more fully described as Lot 1 of Tract No. 1122, in the City of Hermosa Beach, as per Map recorded in Book 17, Page 140 of Maps in the Office of the County Recorder of Los Angeles County, California, which real property was purchased with proceeds obtained as a result of the offenses charged in Count 6.

(2)    The real property located at 14 Pony Lane, in Palos Verdes Peninsula, California, and more fully described as Lot 48 of Tract No. 24953 in the City

16

of Rolling Hills Estates, County of Los Angeles,
State of California, as per Map recorded in Book
650, Pages 98-100 inclusive, of Maps in the office
of the County Recorder of Los Angels County, State
of California.

(3)  $1,000,000 in United States currency as this sum
constitutes the amount of proceeds obtained as a
result of the offenses charged in Count 6.

B.   In committing the offense alleged in Count 7 of
this First Superseding Indictment, ALLEN ANDY KIMBALL shall
forfeit to the United States any and all property, real or
personal, involved in the offense alleged in Count 7, or any
property traceable to such property, including but not limited to
the following property:

$10,000 in United States currency as this sum
constitutes the total amount of money
involved in the offense charged in Count 7.

C.   In committing the offense alleged in Count 8 of
this First Superseding Indictment, ALLEN ANDY KIMBALL and LISA
BERNALES shall forfeit to the United States any and all property,
real or personal, involved in the offense alleged in Count 8, or
any property traceable to such property, including but not
limited to the following property:

$12,000 in United States currency as this sum
constitutes the total amount of money
involved in the offense charged in Count 8.

D.   In committing the offense alleged in Count 10 of
this First Superseding Indictment, JOSE SERPA shall forfeit to
the United States any and all property, real or personal,

17

involved in the offense alleged in Count 10, or any property

traceable to such property, including but not limited to the

following property:

> $267,831.76 in United States currency which
> constitutes the net proceeds from the sale of
> certain real property located at 104 Hermosa
> Avenue, Hermosa Beach, California 90254, and
> more fully described as Lot 1 of Tract No.
> 1122, in the City of Hermosa Beach, as per
> Map recorded in Book 17, Page 140 of Maps in
> the Office of the County Recorder of Los
> Angeles County, California, which real
> property was involved in the offense charged
> in Count 10.

E.    In committing the offense alleged in Count 11 of

this First Superseding Indictment, JOSE SERPA shall forfeit to

the United States any and all property, real or personal,

involved in the offense alleged in Count 11, or any property

traceable to such property, including but not limited to the

following property:

> The real property located at 14 Pony Lane, in Palos
> Verdes Peninsula, California, and more fully described
> as Lot 48 of Tract No. 24953 in the City of Rolling
> Hills Estates, County of Los Angeles, State of
> California, as per Map recorded in Book 650, Pages 98-
> 100 inclusive of Maps in the office of the County
> Recorder of Los Angels County, State of California,
> which real property was involved in the offense charged
> in Count 11.

F.    In committing the offenses alleged in Count 12 of

this First Superseding Indictment, defendants ALLEN ANDY KIMBALL,

JOSE SERPA, REUBEN SILVA, aka "Blackie," BRANDON GONZALES, and

LISA BERNALES shall forfeit to the United States any and all

property, real or personal, involved in the offenses alleged in

Count 12, or any property traceable to such property, including

but not limited to the following property:

> $1,000,000 in United States currency as this sum
> constitutes the amount of proceeds involved in the
> offenses charged in Count 12.

      G.   If any of the above-described forfeitable

property, as a result of any act or commission of the defendants

--

> (1)   cannot be located upon the exercise of due
> diligence;
>
> (2)   has been transferred or sold to, or deposited
> with, a third person;
>
> (3)   has been placed beyond the jurisdiction of the
> Court;
>
> (4)   has been substantially diminished in value; or
>
> (5)   has been commingled with other property which
> cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of said defendants up to the value of the above

forfeitable property.

      All in violation of Title 18, United States Code,

Sections 982(a)(1), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and

1956(h) and Title 21, United States Code, Sections 841(a)(1),

846, 853, and 861.

        DATED: _June 22, 2000_____, at Honolulu, Hawaii.

                                A TRUE BILL

                                /s/
                                _____
                                FOREPERSON, GRAND JURY

_____
STEVEN S. ALM
United States Attorney
District of Hawaii

_____
ELLIOT ENOKI
First Assistant U.S. Attorney

_____
THOMAS J. BRADY
Assistant U.S. Attorney

United States v. Allen Andy Kimball, et al.
"First Superseding Indictment"
Cr. No. 00-00105 SOM